IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEBRA WONDERLY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 25-00172-CV-W-BP |
| FRANK BISIGNANO, Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) ) |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's decision denying her application for disability benefits under Title II. For the following reasons, the Commissioner's decision is **AFFIRMED** for further proceedings.

## I. BACKGROUND

Plaintiff was born in June 1976, completed at least a high school education, and has prior work experience as a certified nurse's aide, certified medication technician, and management trainee at a grocery store. (R. at 31.) She originally filed her application for benefits on October 11, 2020, alleging an onset date of July 1, 2018. (R. at 19.) Plaintiff's application was first denied on October 11, 2021 and then again on reconsideration on July 28, 2022. (R. at 19.) Her most recent hearing took place on August 31, 2023 and her claim for benefits was denied on December 14, 2023. (R. at 19.)

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025, and therefore, pursuant to Rule 25(d), Bisignano should be substituted as the Defendant in this matter.

The ALJ determined Plaintiff suffers from several physical and emotional/psychological conditions, specifically (1) fibromyalgia, (2) cervical, thoracic, and lumbar degenerative disc disease, (3) degenerative joint disease with spondylosis, (4) insulin dependent type II diabetes mellitus, (5) Chari malformation status post-surgery decompression and revision, (6) headaches, (7) occipital neuralgia, (8) supraventricular tachycardia, (9) angina, (10) hypertension, (11) chronic obstructive pulmonary disease (COPD), (12) a lung mass, (13) sarcoidosis, and (14) reconstructive lung disease. (R. at 22.) The ALJ then determined that none of these impairments, alone or in combination, met or equaled a listed impairment.

The ALJ then found Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work, and that Plaintiff "can occasionally climb ramps and stairs, stoop, crouch, kneel, and crawl" but she cannot "climb ladders, ropes, or scaffolds." (R. at 25.) He determined she "must avoid concentrated exposure to excessive vibration, unprotected heights, . . . hazardous machinery . . . [and] loud noise defined as heavy traffic type noise[,]" but can have "occasional exposure to pulmonary irritants such as fumes, odors, dust, gases, poorly ventilated areas, and extreme temperatures both hot and cold." (R. at 25.) He concluded Plaintiff could not perform her past work, but, based on testimony from a Vocational Expert ("VE"), Plaintiff could perform work as an order clerk, check cashier, document preparer, and table worker. (R. at 32.)

Plaintiff argues the ALJ's decision should be reversed because (1) he failed to adequately evaluate if Plaintiff's headaches equaled listing 11.02B, and (2) the RFC does not account for Plaintiff's limitations with respect to her headaches, and he did not properly consider Plaintiff's sworn hearing testimony regarding her headaches. The Commissioner opposes reversal, and the parties' arguments will be discussed below.

## II. DISCUSSION

In determining whether a claimant is entitled to benefits, an ALJ must determine: "1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (quotation omitted); *see also* 20 C.F.R. § 416.920. The Court has a limited ability to revisit these conclusions of an ALJ. Specifically, "review of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). This standard does not permit the Court to reweigh the evidence. *Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). And, although it is favorable to the Commissioner, the substantial-evidence standard requires the Court to consider evidence that fairly detracts from the lower decision. *Id.* If the Court finds substantial evidence to support the Commissioner's decision, however, it cannot reverse simply because there is also substantial evidence that might have supported the opposite outcome. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Put differently, when "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the decision of the Commissioner." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quotation omitted); *see also Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012).

### A. Whether the ALJ Appropriately Considered Listing 11.02B

Plaintiff argues that the decision should be reversed because the ALJ did not consider Listing 11.02B at Step 3, when he decided Plaintiff's headaches did not meet or equal a listed

3

impairment. The ALJ specifically noted that he considered SSR 19-4p, which "provides guidance on how [to] establish that a person has a medically determinable impairment of a primary headache disorder[.]" Soc. Sec. Ruling 19-4p; Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders, SSR 19-4P (S.S.A. Aug. 26, 2019). More specifically, SSR 19-4p describes when and how an ALJ should evaluate a headache disorder as medically equivalent to Listing 11.02B, which is the listing for epilepsy.

According to her medical records, Plaintiff's Chiari malformation and the spinal issues in her neck have been largely responsible for Plaintiff's headaches. (*E.g.*, R. at 493, 1374, 1860.)[2] Chiari malformation is a condition where "brain tissue extends into the spinal canal," often because part of the skull is not shaped properly. *Chiari Malformation*, Mayo Clinic (October 20, 2023), https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010. (*E.g.* R. at 493, 1374.) In February 2023, her Chiari malformation was treated with surgery, but it resulted in complications which were not resolved until March. (R. at 1860-61.) Prior to her surgery, her doctor warned that because of the complicated causation of her headaches, they may not entirely go away after the surgery. (R. at 1374.) The surgery alleviated some of her headaches but did not entirely resolve the problem. (R. at 1860.)

SSR 19-4p specifies that only a *primary* headache disorder will qualify as a medically determinable impairment and that headaches secondary to another diagnosis are not a medically determinable impairment. Plaintiff's primary headache disorder is, to the extent that it qualifies, the Chiari malformation, which was treated through revision and decompression surgery; this is consistent with the ALJ's note at the conclusion of his Step 3 analysis. (R. at 25 (noting that

---

[2] While Plaintiff refers to her headaches as migraines, medical documentation does not contain any such diagnosis. Migraines are a particular type of headache with particular diagnostic criteria, as listed in SSR 19-4p. Rather, her headaches are described as "posterior occipital headaches" and are not listed as a separate diagnosis from her spine and skull issues, (R. at 900), including her Chiari malformation.

4

Plaintiff's headaches appear to be "stable and/or well controlled with treatment.").) The continued presence of her headaches is the *secondary* effect of her remaining neck issues, (*see* R. at 1452); according to SSR 19-4p, they are not subject to comparison to Listing 11.02B. While the ALJ did not go into this degree of detail in his report, the conclusion that Plaintiff's headaches did not meet or medically equal a listed impairment is consistent with the Record as a whole and is therefore affirmed.

### B. Whether the RFC Accounts for Plaintiff's Headaches and Her Testimony About Them

At step four in a social security benefits analysis, the ALJ must evaluate the claimant's RFC, "which is the disability claimant's burden to establish." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (internal citations omitted). The RFC must be "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of her limitations." *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) (cleaned up) (quoting *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015)). Subjective allegations of pain may be discounted by the ALJ if the evidence as a whole is inconsistent with the claimant's testimony. *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). Additionally, "an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (cleaned up).

Plaintiff argues that the Record establishes chronic absenteeism, which the ALJ did not include when formulating the RFC. Plaintiff is correct that where headaches cause chronic absenteeism, that absenteeism must be addressed in the RFC. *Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir. 1998) (holding that chronic absenteeism needed to be included in the RFC where a

5

Case 4:25-cv-00172-BP    Document 19    Filed 03/04/26    Page 5 of 7

plaintiff's migraines rendered him absent roughly once every two weeks). But, first, the ALJ would have to find that chronic absenteeism was indicated by Plaintiff's medical records.

Plaintiff's record of headaches following surgery is much less robust than prior to surgery. Prior to surgery, Plaintiff described her pain as "constant;" on a scale from 0 to 10, she described her pain as a 7 at best and a 10 at worst. (R. at 493.) In her headache questionnaire from January of 2022, she reported she had headaches 2-5 times a week, lasting up to a day or two, which were caused by moving her head the wrong way or laying the wrong way. (R. at 493.) She stated that it could be alleviated by walking and using a cool compress on her neck and eyes. (R. at 494.)

Plaintiff then underwent surgery for Chiari decompression in February 2023. (R. at 1421, 1860.) After the initial complications were corrected in March 2023, Plaintiff stated her headaches were gone. (R. at 1421.) After that she stated they resurfaced. (R. at 1860.) However, the only information about her headaches following this point is a letter from her physician in July 2023 and her own testimony at the hearing.

In the July 2023 letter, Dr. Noojan Kazemi M.D. describes Plaintiff as having a history of "chronic craniometrical pain syndrome with severe headache[s,] occipital pain, and neck pain for many years." (R. at 1860.) Dr. Kazemi reported that Plaintiff "had some improvement" after her surgery, but that her headaches are "still persistent and interfere with her activities of daily living." (R. at 1860.) In her testimony, Plaintiff affirmed that her headaches were better than they had been, but that she still had them. (R. at 55.) She affirmed that she was having headaches every day. (R. at 56.) Plaintiff's attorney asked her what "brings [the headaches] on[,]" and Plaintiff said they were brought on by walking for long periods, bending over, loud noises, and turning "the wrong way too fast[.]" (R. at 56.) She represented that the severity of her headaches varies

throughout the week, but that she gets headaches lasting a full day two to three times per week. (R. at 57.)

The ALJ noted that "Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence[.]" (R. at 27.) With respect to her headaches, this conclusion is supported by Plaintiff's statements that she experienced some relief with respect to her headaches after surgery. It was not, therefore, unreasonable for the ALJ to rely on her representations that she had some relief and that, therefore, her headaches were improved from her initial headache questionnaire.

Further, Plaintiff testified as to what brought on her headaches. The ALJ interpreted Plaintiff's testimony as indicating that loud noises and certain movements caused her severe headaches, and that the severe headaches could be eliminated by factoring the triggers into her working conditions. To do so, the ALJ specified that Plaintiff was restricted to sedentary work without loud noise. (R. at 25.) In this way, the ALJ incorporated Plaintiff's testimony regarding her headaches into the RFC.

It is not unreasonable, given the combination of this information, that the ALJ decided that, with proper accommodations, Plaintiff's headaches do not require her to be chronically absent. Where the Record supported a need for accommodation, the ALJ incorporated the necessary conditions into the RFC. Ultimately, the RFC is substantially supported by the Record as a whole.

### III. CONCLUSION

For the reasons stated above, the Commissioner's final decision is **AFFIRMED**.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, CHIEF JUDGE
**DATE**: March 4, 2026          UNITED STATES DISTRICT COURT